# In the United States Court of Federal Claims

No. 18-228C
Filed: February 22, 2019

| | |
|---|---|
| FIRST MORTGAGE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) Breach Of Contract; Motion To Dismiss; |
| | ) Res Judicata; Judicial Estoppel; RCFC |
| v. | ) 12(b)(6); Failure To State A Claim; |
| | ) Defendant Preclusion; Claim Preclusion. |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

*Jerry Stouck*, Attorney of Record, Greenberg Traurig, LLP, Washington, DC; *Jacob D. Bundick*, Of Counsel, Greenberg Traurig, LLP, Las Vegas, NV, for plaintiff.

*Vincent D. Phillips*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, First Mortgage Corporation ("FMC"), brought this breach of contract action alleging that the Government National Mortgage Association ("Ginnie Mae") violated the terms of several guaranty agreements that FMC entered into with Ginnie Mae in connection with Ginnie Mae's mortgage-backed securities program. *See generally* Compl. The government has moved to dismiss this matter upon the grounds that FMC's claims are barred under the doctrines of res judicata and judicial estoppel, and that FMC has failed to state plausible breach of contract claims, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Def. Mot. at 14-37. For the reasons set forth below, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

FMC is a privately-held corporation based in Ontario, California.  Compl. at ¶¶ 9, 13.  During the period 1975-2015, FMC participated in Ginnie Mae's mortgage-backed securities program (the "MBS Program") as an originator and servicer of government-guaranteed home mortgages and an issuer of Ginnie Mae mortgage-backed securities.  *Id.* at ¶¶ 4, 13, 21.

In this breach of contract action, FMC alleges that Ginnie Mae breached the terms of several guaranty agreements (the "Guaranty Agreements") that FMC entered into with Ginnie Mae in connection with the MBS Program, by improperly terminating FMC from this program in 2015.  *See id.* at ¶¶ 6-7.  As relief, FMC seeks to recover monetary damages from the government and other costs and fees.  *Id*. at Prayer for Relief.

#### 1.     The MBS Program

As background, Ginnie Mae is a wholly-owned corporation of the United States Government that is managed and operated by the United States Department of Housing and Urban Development.  12 U.S.C. § 1717(a)(2)(A).  In connection with its mission to expand affordable housing, Ginnie Mae serves as a vehicle for government-insured and government-guaranteed mortgage loans.  12 U.S.C. § 1716; *see also* Compl. at ¶ 19.

Specifically relevant to this dispute, Ginnie Mae operates the MBS Program, which allows issuers to pool, securitize, and sell mortgage accounts to investors.  *See* Pl. Ex. B at 10-15 (Issuer Guide at § 1-11).  Under the MBS Program, mortgage-backed securities issuers originate loans with home buyers and, through securitization, these issuers sell a portion of the mortgage income stream to investors.  *See* Pl. Ex. B at 8 (Issuer Guide at § 1-10(B)); *see also* Def. Mot. at 5.  Ginnie Mae guarantees the payments to investors under the MBS Program, regardless of the performance of the underlying loan to homebuyers.  12 U.S.C. § 1721(g)(1); Pl. Ex. A at 12-13 (Sample FMC Guaranty Agreement at § 8.01); Pl. Ex. B at 5 (Issuer Guide at § 1-5).

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and the exhibits attached thereto ("Pl. Ex."), the government's motion to dismiss ("Def. Mot.") and the appendices attached thereto ("Def. App'x").  Except where otherwise noted, the facts recited herein are undisputed.

To participate in the MBS Program, issuers must agree to abide by the terms of Ginnie Mae's guaranty agreement—which describes the rights and obligations of Ginnie Mae and the issuers participating in the program—and Ginnie Mae's Mortgage-Backed Securities Guide (the "Issuer Guide").  Pl. Ex. A at 2, 4 (Sample FMC Guaranty Agreement at §§ 1.01, 1.06); *see generally* Pl. Ex. B.  FMC has entered into several such guaranty agreements with Ginnie Mae under the MBS Program.  Compl. at ¶ 5.  These Guaranty Agreements require, among other things, that FMC:

> [C]onform with the servicing standards, procedures, methods, and practices required by the applicable mortgage insurer or guarantor, and any applicable requirements contained in the [Issuer] Guide, and shall establish and maintain books, files, and accounting records in accordance with all of the foregoing.

Pl. Ex. A at 6 (Sample FMC Guaranty Agreement at § 4.01(d)).

FMC's Guaranty Agreements also require that FMC "establish and maintain a Central [Principal & Interest] Custodial Account with a commercial bank, a mutual savings bank, a savings and loan association, or a credit union, the deposits at which are insured by the Federal Government, and which meets any and all other requirements of Ginnie Mae."  *Id.* at 8 (Sample FMC Guaranty Agreement at § 5.01).  And so, the Guaranty Agreements mandate that any other collection accounts "must be cleared daily [and funds transferred into the custodial account], unless the Issuer uses [Automated Clearing House] transfer, in which case the accounts must be cleared every 48 hours."  *Id.* at 9 (Sample FMC Guaranty Agreement at § 5.06).

FMC's Guaranty Agreements also incorporate by reference Ginnie Mae's Issuer Guide, which provides guidance regarding the obligations of issuers with respect to terminating defaulted or delinquent mortgages.  *See* Pl. Ex. B at 173-77 (Issuer Guide at § 18-3); *see also* Pl. Ex. A at 4 (Sample FMC Guaranty Agreement at § 1.06).  The Issuer Guide requires, among other things, that FMC maintain an acceptable rate of delinquent loans in its mortgage portfolio. Pl. Ex. B at 46 (Issuer Guide at § 3-16).

The Issuer Guide also permits issuers to repurchase loans that are overdue and unpaid for three consecutive months for the amount of the remaining outstanding principal loan balance.  *Id.* at 174 (Issuer Guide at § 18-3(B)(1)(c)).  In addition, the Issuer Guide allows issuers to re-pool and re-sell repurchased loans, if the loans become current after becoming eligible for repurchase. *See id.* at 83-84, 175 (Issuer Guide at §§ 9-2(E), 18-3(B)(5)).

3

Lastly, FMC's Guaranty Agreements also contain default provisions that are central to this breach of contract dispute.  Pl. Ex. A at 13-16 (Sample FMC Guaranty Agreement Art. X). Specifically, FMC's Guaranty Agreements provide that:

> (a) Immediate Default.  An event of default by the Issuer occurs if Ginnie Mae, in its sole discretion, determines that any of the following acts or conditions have occurred or exist:
>
> . . . .
>
> (7) Any unauthorized use of Custodial Funds;
>
> . . . .
>
> (9) Any submission of false reports, statements or data or any act of dishonesty or breach of fiduciary duty to Ginnie Mae related to the MBS program.

Id. at 13-14 (Sample FMC Guaranty Agreement at § 10.01).  The Guaranty Agreements also provide that:

> On the occurrence or development of any event of default, Ginnie Mae may, in its sole discretion, but is not required to, confer and negotiate with the Issuer with respect to remedying and correcting the default.  Any such arrangements mutually agreed upon shall be placed in written contractual form, and shall be supplementary to this Agreement.

Id. at 14 (Sample FMC Guaranty Agreement at § 10.03).  In addition, the Guaranty Agreements provide that "[o]n the occurrence or development of any event of default . . . Ginnie Mae may, by letter directed to the Issuer . . . automatically effect and complete the extinguishment of any redemption, equitable, legal, or other right, title, or interest of the Issuer in the Mortgages."  Id. at 14-15 (Sample FMC Guaranty Agreement at § 10.04).

## 2.   FMC's Termination From The MBS Program

On May 16, 2014, Ginnie Mae issued a letter to all participants in the MBS Program clarifying the agency's general loan buyout policy with respect to delinquent mortgage loans. See generally Pl. Ex. D.  Ginnie Mae acknowledged in this letter that the agency's Issuer Guide "has created confusion as to whether, if a borrower remits any payment including a partial payment while the loan is in default, the Issuer must wait a minimum of three additional months before the loan can be bought out of the pool."  Id. at 1.  And so, Ginnie Mae clarified in the letter that "[p]ayments from delinquent borrowers, including partial payments, do not re-start the calculation period unless they are sufficient to bring the loan current."  Id.

After Ginnie Mae became aware of certain loan repurchasing practices by FMC that might constitute a violation of FMC's Guaranty Agreements, Ginnie Mae conducted an on-site servicing audit and compliance review of FMC in March 2015.  Pl. Ex. E at 1; *see also* Compl. at ¶ 39; Def. Mot. at 7.  On May 12, 2015, Ginnie Mae served FMC with a notice of default stating that FMC's loan repurchasing practices "constitute events of immediate default under the terms of the Guarantee Agreements."  *See generally* Pl. Ex. E.  In the default notice, Ginnie Mae identified FMC's failure to transfer borrower payments to the Ginnie Mae custodial fund and FMC's false reports to Ginnie Mae regarding delinquent loans, as violations of Sections 10.01(a)(7) and (a)(9) of the Guaranty Agreements.  *Id.* at 1.

Although Ginnie Mae was entitled to immediately terminate FMC from the MBS Program, Ginnie Mae stated in the default notice that it would "forbear from immediately effectuating the termination and extinguishment of [FMC] provided that [FMC] delivers to Ginnie Mae, within 14 days of this letter, a detailed written response that affirms its intent to comply with the conditions established by Ginnie Mae in this letter and otherwise address[es] each of the items identified [by Ginnie Mae in the letter]."  *Id.* at 1-2.  On May 26, 2015, FMC responded to Ginnie Mae's notice of default by stating that FMC would abide by the conditions set forth in the notice of default.  Pl. Ex. F at 1-4.  Nonetheless, on June 11, 2015, Ginnie Mae terminated FMC's participation in the MBS Program.  *See generally* Pl. Ex. G.[2]

### 3.    The SEC Civil Enforcement Action

After Ginnie Mae terminated FMC from the MBS Program, the United States Securities and Exchange Commission (the "SEC") initiated a civil enforcement action against FMC and its corporate officers in the United States District Court for the Central District of California on May 31, 2016 (the "SEC Civil Enforcement Action").  *See generally* Def. App'x A (SEC Compl.).  In the SEC Civil Enforcement Action, the SEC alleged that, during the period March 2011–March 2015, FMC misled investors in the MBS Program by "falsely claiming to both [Ginnie Mae] and investors that certain mortgage loans in [FMC's] securities were delinquent when, in fact, such loans were current."  *Id.* at 2-3 (SEC Compl. at ¶ 4).  The SEC also alleged

---

[2] Ginnie Mae afforded FMC a 90-day forbearance period to permit FMC "to negotiate for the sale of its Ginnie Mae portfolio to an acceptable counterparty."  Pl. Ex. G at 1.  And so, FMC sold its Ginnie Mae portfolio.  Compl. at ¶ 58.

that FMC "improperly exercised" the option to repurchase delinquent loans by "delay[ing] depositing the curing borrower payments until after [FMC] had repurchased the loans and placed them back into FMC inventory." *Id.* at 3 (SEC Compl. at ¶ 7). And so, the SEC contended in that action that FMC falsely certified its compliance with Ginnie Mae's Issuer Guide to Ginnie Mae. *Id.* at 10 (SEC Compl. at ¶ 40).

On June 3, 2016, the SEC and FMC entered into a consent agreement in which FMC agreed to, among other things, have judgment entered against it in the SEC Civil Enforcement Action and pay certain civil penalties and fees ("Consent Agreement"). *See generally* Def. App'x B at 11-16 (Consent Agreement). The Consent Agreement requires that FMC:

> (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that [FMC] does not admit the allegations of the complaint, or that this Consent [Agreement] contains no admission of the allegations, without also stating that [FMC] does not deny the allegations . . . .

*Id.* at 14 (Consent Agreement at ¶ 11). In addition, paragraph 11 of the Consent Agreement provides that "[n]othing in this paragraph affects [FMC]'s . . . right to take legal or factual positions in litigation or other legal proceedings in which the [SEC] is not a party." *Id.*

On July 20, 2016, the United States District Court for the Central District of California entered a consent judgment that incorporates the Consent Agreement and resolves the SEC Civil Enforcement Action ("Consent Judgment"). *See generally* Def. App'x C (Consent Judgment). In the Consent Judgment, the district court found FMC liable to the government for disgorgement of $7,500,000.00, together with prejudgment interest in the amount of $534,474.82 and a civil penalty in the amount of $3,750,000.00. *Id.* at 3. The district court also ordered FMC to abide by the terms of the Consent Agreement.[3] *Id.* at 1-4.

---

[3] After the district court entered the Consent Judgment, FMC commenced a breach of contract action against Ginnie Mae in the United States District Court for the Central District of California challenging FMC's termination from the MBS Program. *See generally* Compl., *First Mortg. Corp. v. Gov't Nat'l Mortg. Assoc.*, No. 5:17-cv-01225 (C.D. Cal. June 20, 2017), at Entry No. 1. The district court dismissed that case for lack of subject-matter jurisdiction on January 4, 2018. *See* Order, *First Mortg. Corp. v. Gov't Nat'l Mortg. Assoc.*, No. 5:17-cv-01225 (C.D. Cal. Jan. 4, 2018), at Entry No. 29.

B.      **Procedural Background**

On February 14, 2018, FMC filed the complaint in this matter.  *See generally* Compl.  On July 16, 2018, the government filed a motion to dismiss this matter, pursuant to RCFC 12(b)(6). *See generally* Def. Mot.

On August 24, 2018, FMC filed a response and opposition to the government's motion to dismiss.  *See generally* Pl. Resp.  On September 21, 2018, the government filed a reply in support of its motion to dismiss.  *See generally* Def. Reply.

This matter having been fully briefed, the Court resolves the pending motion to dismiss.

III.   **LEGAL STANDARDS**

A.      **Jurisdiction And Breach Of Contract Claims**

Pursuant to the Tucker Act, this Court possesses subject-matter jurisdiction to consider express or implied-in-fact contract claims brought against the United States.  *See Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009).  In such cases, the plaintiff bears the burden of proving the existence of a contract with the United States and it must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights."  *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

The United States Court of Appeals for the Federal Circuit has held that a plaintiff must have privity of contract with the United States to pursue a breach of contract claim against the United States.  *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citations omitted) ("[T]he 'government consents to be sued only by those with whom it has privity of contract.'").  The Federal Circuit has also held that a plaintiff must support a contract claim with well-pleaded allegations going to each element of a contract.  *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

In this regard, it is well-established that the requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts. *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract. . . ."). Specifically, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). In addition, this Court has recognized that a government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."[4] *Id*. at 187.

**B.**    **RCFC 12(b)(6)**

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, this Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *See Redondo v. United States*, 542 F. App'x 908, 909-10 (Fed. Cir. 2013). And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] A government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 F. App'x. 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citations omitted). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.      Res Judicata And Judicial Estoppel

The Federal Circuit has recognized that "[t]he doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008).  Claim preclusion prevents a party from relitigating the same claims that were, or could have been, raised in a prior action. *Goad v. United States*, 46 Fed. Cl. 395, 397 (2000) (citations omitted).  And so, claim preclusion serves the public interest by reducing the number of lawsuits, conserving judicial resources, and preventing inconsistent decisions. *Id.*

It is well-established that claim preclusion bars a claim where:  "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (citations omitted) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  With regards to the third factor of claim preclusion, the Federal Circuit has held that "the somewhat different rules" of defendant preclusion apply when the defendant in the first suit is the plaintiff in the second action. *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324 (Fed. Cir. 2008) (citing Wright, Miller & Cooper, Fed. Prac. & Proc. § 4414 (2d ed. 2002)).  Under such circumstances, a claim or defense asserted by a defendant is precluded only if:  (1) the claim or defense asserted in the second action was a compulsory counterclaim that the defendant failed to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment. *Id.* (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); Restatement (Second) of Judgments §§ 18(2),

22(2) (Am. Law Inst. 1982)).  And so, the Federal Circuit has recognized that claim preclusion bars a collateral attack on an earlier judgment.  *Id*. at 1328 (citing *Faust v. United States*, 101 F.3d 675, 678 (Fed. Cir. 1996)).

In addition, this Court has held that the doctrine of judicial estoppel estops a party that has successfully urged a particular position in a legal proceeding from taking a contrary position in a subsequent proceeding, where its interests have changed.  *Buckley v. United States*, 57 Fed. Cl. 328, 341 (2003) (citations omitted).  Judicial estoppel is "designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants."  *Id*. And so, the Court considers three factors when determining whether judicial estoppel should bar a claim:  (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Trustees in Bankruptcy of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) (citations omitted).

## IV.    LEGAL ANALYSIS

The government has moved to dismiss this matter for failure to state a claim upon which relief can be granted for several reasons.  First, the government argues in its motion to dismiss that res judicata and defendant preclusion bar FMC's breach of contract claims in this case, because FMC's complaint seeks to collaterally attack the Consent Judgment previously entered by the district court in the SEC Civil Enforcement Action.  Def. Mot. at 14-22.  The government also argues that the doctrine of judicial estoppel bars FMC's claims, because "FMC has taken a completely contrary position [in this case] compared to the one that it took in the [SEC Civil Enforcement Action]."  *Id*. at 22-23.

In addition, the government contends that FMC fails to allege plausible breach of contract claims in the complaint, because Ginnie Mae did not breach or repudiate FMC's Guaranty Agreements and no cure agreement exists between FMC and Ginnie Mae that would allow FMC to continue performance under the Guaranty Agreements.  *Id*. at 23-37.  And so, the government

requests that the Court dismiss FMC's complaint for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). *Id*. at 37.

In its response and opposition to the government's motion to dismiss, FMC counters that res judicata and defendant preclusion do not bar its claims in this matter because, among other things, this case is not a collateral attack on the district court's Consent Judgment. Pl. Resp. at 7-11.  FMC also argues that the doctrine of judicial estoppel is not applicable to this case, because FMC's position in this litigation is not contrary to the Consent Agreement that it entered with the SEC. *Id*. at 11-12.  In addition, FMC argues that it states plausible breach of contract claims in the complaint. *Id*. at 12-39.  And so, FMC requests that the Court deny the government's motion to dismiss and permit it to proceed with this litigation. *Id*. at 40.

For the reasons set forth below, a careful reading of FMC's complaint makes clear that res judicata and defendant preclusion preclude FMC from proceeding with this litigation because FMC's breach of contract claims present a collateral attack on the district court's Consent Judgment.  And so, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.  RCFC 12(b)(6).

## A.      FMC's Breach Of Contract Claims Are Precluded

The government persuasively argues that res judicata and defendant preclusion bar FMC from bringing this breach of contract action.  It is well-established that claim preclusion bars a claim where:  (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014); *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006).  The Federal Circuit has also held that, when the defendant in the first action later brings a second action related to the first case, the doctrine of defendant preclusion is used to determine whether the second case is based on the same set of transactional facts as the first. *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324 (Fed. Cir. 2008).

Under the doctrine of defendant preclusion, FMC may be precluded from bringing this action if either, (1) its breach of contract claims were compulsory counterclaims that FMC failed to assert in the SEC Civil Enforcement Action, or (2) FMC's breach of contract claims are essentially a collateral attack on the district court's Consent Judgment. *Id.*  And so, if FMC's

complaint seeks to collaterally attack the district court's Consent Judgment, the Court must dismiss the case. *Id.*

A careful reading of the complaint makes clear that FMC's breach of contract claims are barred under claim preclusion and defendant preclusion.

### 1. The Parties Are Identical Or In Privity

First, as the government correctly argues in its motion to dismiss, the parties to this action are either identical to, or in privity with, the parties to the SEC Civil Enforcement Action. The parties agree that FMC was a party to the SEC Civil Enforcement Action in the United States District Court for the Central District of California. Def. Mot. at 16-17; Pl. Resp. at 10. And so, the only disagreement between the parties here is whether the SEC is in privity with the United States for purposes of applying the doctrine of res judicata in this case.

The Court agrees with the government that the United States is presumed to be a party to both the SEC Civil Enforcement Action and this case, because there is privity between officers of the same government for res judicata purposes. As the Supreme Court recognized in *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." 310 U.S. at 402-03. The Supreme Court has also recognized that the question of the identity of parties is not "a mere matter of form, but of substance." *Id.* at 402. And so, the Court may find privity between the SEC and United States here, if it concludes that the SEC had the authority to represent the interest of the United States in a final adjudication of the issues in controversy in the SEC Civil Enforcement Action. *Id.* at 402-03.

The undisputed facts in this case show that the SEC possessed such authority. In the SEC Civil Enforcement Action, the SEC alleged that FMC violated federal securities laws by misleading investors in the MBS Program and "falsely claiming to both [Ginnie Mae] and investors that certain mortgage loans in [FMC's] securities were delinquent when, in fact, such loans were current." Def. App'x A at 2-3 (SEC Compl. at ¶ 4). The SEC also alleged in that action that FMC "improperly exercised" the option to repurchase delinquent loans by "delay[ing] depositing the curing borrower payments until after [FMC] had repurchased the loans and placed them back into FMC inventory." *Id.* at 3 (SEC Compl. at ¶ 7). And so, the SEC's complaint

makes clear that the factual basis for the agency's civil enforcement action was FMC's loan repurchasing practices.  Given this, the SEC *could* have litigated the core issue presented in this breach of contract case—whether FMC's loan repurchasing practices constitute an event of default under FMC's Guaranty Agreements.[5]  *See* Compl. at ¶¶ 29-44, 55, 76, 97; *see also* Pl. Ex. A at 13-14.

Indeed, as the government observes in its motion to dismiss, the SEC would have been required to represent the United States in responding to any defense or counterclaim that FMC could have asserted in the SEC Civil Enforcement Action regarding FMC's compliance with the Guaranty Agreements and the propriety of the decision to terminate FMC from the MBS Program.  *See id.* at 3, 10 (SEC Compl. at ¶¶ 7, 40).  In addition, while FMC correctly argues that the SEC is not authorized to represent the United States in this breach of contract dispute, the fact that the Department of Justice has exclusive litigation authority to represent the United States in this case did not preclude the SEC from fully representing the United States in connection with any claims or defenses that FMC could have asserted during the SEC Civil Enforcement Action.  *See United States v. Rogers*, 960 F.2d 1501, 1507-10 (10th Cir. 1992) (holding that a prior SEC civil enforcement action barred a criminal fraud charge under issue preclusion even though the SEC could not have brought the criminal charge).  And so, the Court concludes that the SEC and United States are in privity for res judicata purposes and that the first factor of claim preclusion is satisfied.  *Sunshine Anthracite Coal Co.*, 310 U.S. at 402-03.[6]

---

[5] FMC's reliance upon *United States v. Radio Corp. of America*, 358 U.S. 334 (1959), to dispute privity upon the ground that the SEC Civil Enforcement Action and this matter involve different legal issues is misplaced.  Pl. Resp. at 11 n.2.  In that case, the precise issue in controversy—whether the exchange of television stations violated antitrust provisions in the Sherman Act—had not been addressed in the prior proceeding before the Federal Communications Commission.  *Radio Corp. of Am.*, 358 U.S. at 352.  But, in this case, the SEC Civil Enforcement Action was directly predicated upon the same loan repurchasing practices that are at issue in FMC's breach of contract claims.  *See, e.g.*, Def. App'x A at 4 (SEC Compl. at ¶ 10) ("The practice also operated as a fraudulent scheme and course of business against [Ginnie Mae MBS] investors and [Ginnie Mae].").

[6] The Court is also not persuaded by FMC's argument that there can be no privity between the SEC and the United States, because the Consent Agreement "distinguishes the SEC's role in [the SEC Civil Enforcement Action] from other 'litigation or other legal proceedings in which the [SEC] is not a party.'"  Pl. Resp. at 10.  The language upon which FMC relies neither addresses the issue of privity, nor precludes the SEC from being found to be in privity with the United States for res judicata purposes.  FMC's argument that *Sunshine Anthracite Coal* does not control the result in this case, because "the second case [at issue in *Sunshine Anthracite Coal*] involved litigation of exactly the same legal issue as the first case,"

### 2.      The SEC Civil Enforcement Action Proceeded To A Final Judgement

Second, as FMC acknowledges, there is no dispute that the SEC Civil Enforcement Action proceeded to a final judgment on the merits prior to the commencement of this case.  Pl. Resp. at 10; *see also* Def. App'x C (Consent Judgment).  It is well-established that "consent judgments entered pursuant to settlement agreements have the same effect as judgments after a trial on the merits."  *Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) (citing *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294-95 (Fed. Cir. 2001)).  In this case, FMC and the SEC entered into the Consent Agreement to resolve the SEC Civil Enforcement Action.  Def. Mot. at 16-17; Pl. Resp. at 10.  Thereafter, the district court entered the Consent Judgment, which incorporates the terms of the Consent Agreement.  *See generally* Def. App'x C (Consent Judgment).  Given this, there can be no dispute that the SEC Civil Enforcement Action proceeded to a final judgment, and that the second factor of claim preclusion has been met in this case.

### 3.      The Cases Arise From The Same Set Of Transactional Facts

Lastly, the final factor relevant to claim preclusion—whether the SEC Civil Enforcement Action and this dispute arise from the same set of transactional facts—is also met in this case. As discussed above, when the defendant in the first action later brings a second action related to the first case—as is the case here—the doctrine of defendant preclusion is used to determine whether the second case is based on the same set of transactional facts as the first.  *Nasalok Coating Corp.*, 522 F.3d at 1324.  And so, FMC may be precluded from bringing this action if either, (1) the claim or defense asserted here was a compulsory counterclaim that FMC failed to assert during the SEC Civil Enforcement Action; or (2) FMC's breach of contract claims are essentially a collateral attack on the district court's Consent Judgment.  *Id.*

---

is also misguided.  Pl. Resp. at 10-11.  FMC appears to suggest that privity between government officials can only be found when considering issue preclusion.  *See id.*  But, courts have recognized that privity between government agents can be found for res judicata purposes when determining whether the doctrine of claim preclusion should apply.  *See, e.g.*, *Town of Seabrook v. State of N.H.*, 738 F.2d 10, 11 (1st Cir. 1984) (holding that privity existed between government agencies and their employees when applying claim preclusion, even though the suits involved different named entities or officials).

A careful reading of the complaint makes clear that FMC's breach of contract claims are essentially a collateral attack on the Consent Judgment entered by the district court for several reasons.

First, permitting FMC to proceed with this litigation would run afoul of the Consent Judgment's prohibition against FMC suggesting that the SEC's complaint lacks a factual basis, thereby impairing the district court's Consent Judgment. As discussed above, the factual basis of the SEC's complaint in the SEC Civil Enforcement Action was that FMC engaged in improper loan repurchasing practices, which resulted in misleading statements to Ginnie Mae and investors and ultimately led to FMC's termination from the MBS Program. A reading of FMC's complaint makes clear that FMC improperly seeks to contest these factual allegations in this litigation. In the complaint, FMC alleges that it "performed all obligations, covenants, and conditions required of it under all the Guaranty Agreements in force as of June 11, 2015" and that Ginnie Mae "materially breached its obligations under the Guaranty Agreements by terminating FMC's issuer status with no underlying event of default." Compl. at ¶¶ 83-84. FMC's allegations plainly call into question the factual basis of the SEC's complaint—that FMC engaged in improper loan repurchasing practices.

Because the district court's Consent Judgment incorporates the Consent Agreement's requirement that FMC "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the [SEC's] complaint or creating the impression that the complaint was without a factual basis," FMC may not challenge the factual basis of the SEC's complaint in this proceeding without violating the terms of the district court's Consent Judgment. Def. App'x B at 14 (Consent Agreement ¶ 11); Def. App'x C at 4 (Consent Judgment at § IV). Yet, that is precisely what FMC seeks to do in this case. And so, the Court concludes that FMC's successful prosecution of this case would impair the district court's Consent Judgment.

Permitting FMC to proceed with this litigation would also impair the Consent Judgment by requiring the district court to modify the relief granted in that judgment, if FMC succeeds upon the merits of its breach of contract claims. The district court awarded various injunctive and monetary relief to the government in the Consent Judgement, including holding FMC liable for disgorgement of $7,500,000.00 "representing profits gained as a result of the conduct alleged

in the [SEC's Complaint]," based upon the factual allegations contained in the SEC's complaint. *Id.* at 1-3. Notably, the Consent Judgment expressly states that the award of disgorgement represents the "profits [that FMC] gained *as a result of the conduct alleged in the* [*SEC's*] *Complaint*." *Id.* at 3 (emphasis supplied). And so, a determination by this Court that FMC did not engage in this conduct would refute the very basis upon which the district court relied to grant relief to the government, thereby impairing the judgment of the district court.

The government also persuasively argues that the successful prosecution of this matter could nullify the district court's Consent Judgment altogether, because FMC would have viable contract defenses against any liability for defaulting under the Guaranty Agreements. In Count II of the complaint, FMC alleges that Ginnie Mae "materially breached its obligations under the Guaranty Agreements by terminating FMC's issuer status with no underlying event of default." Compl. at ¶ 84. FMC also alleges in Count IV of the complaint, that Ginnie Mae violated the covenant of good faith and fair dealing, because FMC's termination from the MBS program "was ginned up due to pressure from the SEC" and made "in bad faith." *Id.* at ¶¶ 67, 99.

Should FMC substantiate these claims in this litigation, FMC would also establish contractual defenses that could require the district court to vacate the Consent Judgment. As discussed above, the Consent Judgment is based upon a factual finding by the district court that FMC engaged in improper loan repurchasing practices that, among other things, warranted FMC's termination from the MBS Program. *See* 18A Edward H. Cooper, Fed. Prac. & Proc. § 4443 (3d ed. 2018). And so, permitting this litigation to proceed could require the district court to set aside the Consent Judgment.

Lastly, the Court is not persuaded by FMC's arguments that this case is not a collateral attack on the district court's Consent Judgment, because FMC may take other legal or factual positions in litigation in which the SEC is not a party and the resolution of this matter will not impact the Consent Judgment. Pl. Resp. at 7-9. While FMC correctly argues that paragraph 11 of the Consent Agreement permits FMC to take a different legal or factual position from the position taken in the SEC Civil Enforcement Action in any litigation in which the SEC is not a party, this provision has no relevance here because, as discussed above, the SEC is a party to this case for res judicata purposes. *See Sunshine Anthracite Coal Co.*, 310 U.S. at 402-03; *see also* Def. App'x B at 14 (Consent Agreement ¶ 11).

FMC's attempt to distinguish this case from *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008), is also misguided.  In *Nasalok*, the Federal Circuit held that defendant preclusion barred a trademark invalidity claim brought by Nasalok Coating Corporation, because success in that trademark case would undermine the default judgment and injunction issued against Nasalok by the United States District Court for the Northern District of Illinois in a previous trademark infringement case involving the same trademark.  *Nasalok Coating Corp.*, 522 F.3d at 1328.  Notably, the Federal Circuit recognized in *Nasalok* that defendant preclusion should bar Nasalok's trademark invalidity claim, because "a defense that could have been interposed [in the prior trademark infringement case] cannot later be used to attack the judgment of the first action."  *Id.*

Similarly, here, FMC's claims that Ginnie Mae breached the Guaranty Agreements by terminating FMC from the MBS Program "with no underlying event of default"—and that Ginnie Mae terminated FMC from that program in bad faith—are defenses that FMC *could* have raised in the SEC Civil Enforcement Action to refute the government's securities fraud claims.  While FMC certainly had the discretion not to raise these arguments during that proceeding, FMC cannot use the present litigation as a forum to collaterally attack the Consent Judgment entered in the SEC Civil Enforcement Action.

Because the parties to this action are identical to, or in privity with, the parties to the SEC Civil Enforcement Action, the SEC Civil Enforcement Action proceeded to a final judgment on the merits, and this litigation and the SEC Civil Enforcement Action are based on the same set of transactional facts, claim preclusion and defendant preclusion bar FMC from litigating its breach of contract claims.  And so, for these reasons, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.

## V.   CONCLUSION

In sum, the government has shown that FMC's breach of contract claims in this matter are precluded under the doctrine of res judicata, because this action is essentially a collateral attack on the Consent Judgment entered by the United States District Court for the Central

District of California in the SEC Civil Enforcement Action.  And so, for the foregoing reasons, the Court:

1.    **GRANTS** the government's motion to dismiss; and

2.    **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge